# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 1:19MJ178 |
| 215 William Penn Plaza, Apartment 822 Durham, Durham County, North Carolina 27704 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment C, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 | Conspiracy |
| 18 U.S.C. 2314 | Interstate Transportation of Stolen Goods |

The application is based on these facts:
See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. William McLane, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/24/2019

_____
*Judge's signature*

City and state:  Winston-Salem, North Carolina

Joi Elizabeth Peake, United States Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

### INTRODUCTION

1.     I, William McLane, (hereinafter referred to as "affiant"), depose and state that I am a Special Agent with the Department of Homeland Security, (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since June of 2003.  I am currently assigned to the HSI Resident Agent in Charge Raleigh, North Carolina Field Office (HSI Raleigh) where my duties include investigating violations of Titles 8, 18, 19, 21 and 31 of the United States Code. I am a "Federal Law Enforcement Officer" within the meaning of Rule 41 (a) of the Federal Rules of Criminal Procedure and authorized to investigate violations of laws of the United States and execute warrants issued under the authority of the United States. I am a graduate of the Federal Law Enforcement Training Center and have received training in Federal criminal statutes, search, seizure and arrest authority, and many other facets of law enforcement. Prior to my employment with ICE, I was a Detective employed by the Conway, Arkansas Police Department for approximately seven and a half years. Because of my personal participation in the investigation and review of reports made by other Special Agents of HSI, as well as other federal, state and local law enforcement officers, I am familiar with the circumstances of this investigation and this application.

2.     This affidavit is made in support of an application for a warrant to search the entire premises located at:

> a.  215 William Penn Plaza, Apartment 822, Durham, North Carolina 27704 (hereinafter referred to as "SUBJECT PREMISES A"), located within the Middle District of North Carolina. SUBJECT PREMISES A is more particularly described in Attachment A of this affidavit.

1

b. Dickerson Self Storage, Unit 101, 116 N. Hoover Road, Durham, North Carolina, 27703 (hereinafter referred to as "SUBJECT PREMISES B"), located within the Middle District of North Carolina. SUBJECT PREMISES B is more particularly described in Attachment B of this affidavit.

3. Because this affidavit is being submitted for the purpose of securing warrants to search, SUBJECT PREMISES A and SUBJECT PREMISES B, your affiant has set forth only those facts that your affiant believes are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities for violations of Title 18 U.S.C. Section 2314 (Interstate Transportation of Stolen Property) and Section 371 (Conspiracy), hereinafter referred to as the "SUBJECT OFFENSES." More specifically, your affiant seeks authorization to locate items described in Attachment C and Attachment D and to seize those items as evidence, fruits, and instrumentalities of the above-mentioned violations.

## BACKGROUND

4. Since about October 27, 2014, Salvador Ibarra-Escalante, Ruth Nava-Abarca, and Florentino Valencia-Tepoz, operated businesses sometimes in concert, other times independently, under the names of Clean Recovery, Sin Services, Bio Recycling, and Environmental Services Millennium,[1] and conspired to steal, collect, and sell used cooking oil in the Middle District of North Carolina and elsewhere, with the knowledge and intent that the stolen used cooking oil be transported out of North Carolina to Virginia and New Jersey.

5. Clean Recovery, Sin Services, Salvador Ibarra-Escalante, Ruth Nava-Abarca, and Florentino Valencia-Tepoz are purportedly in the business of collecting used cooking oil from restaurants and selling it to refineries so that it can be

---

[1] In April 2018, HSI Raleigh conducted queries of the NC Employment Security Commission. No records or reporting was found in the NC wage history file for Salvador Ibarra-Escalante, Ruth Nava-Abarca, and Florentino Valencia-Tepoz.

processed and recycled. This spent cooking oil from restaurant fryers can be used to make soap, makeup, clothes, rubber, detergents, and bio-fuel. This spent oil is not waste to be hauled away but a commodity that is bought and sold.

6.    Because used cooking oil can be sold, restaurants will often contract with a renderer who will purchase the used cooking oil. A number of legitimate companies in the North Carolina and elsewhere are in the business of buying and collecting used cooking oil and then selling it.[2] Upon reaching an agreement to buy the used cooking oil from a restaurant, the rendering company will supply that restaurant a containment drum. As the restaurant uses the cooking oil, they place the spent cooking oil in the containment drum.

7.    The rendering companies label these containment drums indicating ownership. The rendering companies also, when practical, place locks on the drums.

8.    The economic loss is a combination of the following:

   a. The restaurants lose revenue or commission paid by the rendering companies to collect the used cooking oil.

   b. The rendering companies lose revenue from the theft of the used cooking oil.

---

[2] Your affiant has met with owners, managers, and law enforcement liaisons from Darling Ingredients Inc, Valley Proteins Inc, Mahoney Environmental, and Greasecycle in regard to company losses due to theft. These companies are legitimate companies that operate bio-fuel recycling in the Middle and Eastern Districts of North Carolina and elsewhere. Each of the rendering companies has reported that increased prices for biofuel feed stocks have led to an increase in thefts of spent cooking oil and grease. Mahoney's estimated that the industry lost approximately 190 million pounds due to theft annually. One gallon of used cooking oil weighs approximately 7.5 pounds. The current pricing for the used cooking oil is between $.25 and $.29 a pound. The companies reported receiving numerous complaints from customers regarding their used cooking oil reimbursements, in addition to oil spillage and damaged or unlocked containers in the surrounding Raleigh-Durham area.

3

c. The rendering companies suffer a financial loss for the cost of damaged equipment, including locks being cut and container lids being pried open.

d. The rendering companies are still obligated to clean the containment drums, although not collecting any used cooking oil.

e. The rendering companies suffer attrition from restaurant owners frustrated from the loss of revenue.

<u>THE CONSPIRACY</u>

9. From on or about October 27, 2014, to on or about May 2019, in the Middle District of North Carolina, and elsewhere, Florentino Valencia-Tepoz, Salvador Ibarra-Escalante, and Ruth Nava-Abarca conspired and agreed with others, known and unknown, to commit an offense against the United States, that is, to knowingly transport and transfer in interstate commerce, stolen goods, that is used cooking oil, knowing that this oil was stolen, in violation of the SUBJECT OFFENSES.

10. While running Clean Recovery and Sin Services, Florentino Valencia-Tepoz, Salvador Ibarra-Escalante, and Ruth Nava-Abarca hired aliens, who predominately were illegally and unlawfully in the U.S., to travel around North Carolina and other surrounding states, during the night hours and under the cover of darkness to steal used cooking oil from storage containers used by restaurants. Florentino Valencia-Tepoz, Salvador Ibarra-Escalante, and Ruth Nava-Abarca communicated with employees via text messaging and phone directing them on which restaurants to target.

11. Florentino Valencia-Tepoz, Ruth Nava-Abarca, and other known individuals, purchased, registered or caused to be registered, sixteen (16) box trucks to be used in the facilitation of stealing used cooking oil. Florentino Valencia-Tepoz,

4

Salvador Ibarra-Escalante, and Ruth Nava-Abarca supplied their employees with a box truck containing holding tanks and pumping systems to pump the oil out of the restaurant storage containers.

| Truck # | Year and Make | License Plate | VIN | Registered owner |
|---------|---------------|---------------|-----|------------------|
| Box Truck 1 | 2010 Chevrolet | NC JP-5005 | 2915 | Cruz, Samuel |
| Box Truck 2 | 2005 Ford | VA 97208 | 3945 | Nava-Abarca, Ruth |
| Box Truck 3 | 1994 Mitsubishi | NC DAB-7791 | 4337 | Evo, Eric |
| Box Truck 4 | 2004 GMC | VA VMA-5519 | 0997 | Nava-Abarca, Ruth |
| Box Truck 5 | 2011 Ford | NC HP-6519 | 7765 | Vazquez-Castillo, Gregorio |
| Box Truck 6 | 1999 Isuzu | NC CJK-8859 | 4781 | Gomez-Gonzalez, Emilio |
| Box Truck 7 | 2005 Isuzu | NC CFL-5050 | 7313 | Escalante-Campos, Toribio |
| Box Truck 8 | 1999 Ford | VA TX-82990 | 3621 | Nava-Abarca, Ruth |
| Box Truck 9 | 2011 Chevrolet | NC HC-8280 | 5971 | Vazquez-Castillo, Gregorio |
| Box Truck 10 | 2007 Mitsubishi | NC JL-6704 | 1671 | Clean Recovery |
| Box Truck 11 | 2008 Ford | NC JK-4077 | 2953 | Clean Recovery |
| Box Truck 12 | Unknown | None | Unk | "Trap Boys, Brooklyn" |
| Box Truck 13 | 1999 Mitsubishi | VA TX308243 | 5199 | Mendez-Flores, Alvaro |
| Box Truck 14 | 1999 Isuzu | PA ZLL1760 | 6626 | Evo, Eric |
| Box Truck 15 | 2004 Isuzu | VA TX19376 | 0436 | Mendez-Flores, Alvaro |
| Box Truck 16 | Isuzu | None | Unk | "Trap Boys, Brooklyn" |

12.     Florentino Valencia-Tepoz, Salvador Ibarra-Escalante, and Ruth Nava-Abarca maintained a warehouse at the Regional Commerce Center located at 706 Ellis Road, Unit 12, Durham, North Carolina (hereinafter referred to as "Warehouse #1"), within the Middle District of North Carolina, from December 31, 2014 to July 1, 2018. Florentino Valencia-Tepoz, Salvador Ibarra-Escalante, and Ruth Nava-Abarca utilized Warehouse #1 to consolidate and store the stolen used cooking oil until it could be collected by Garden State Green Energy, a business located in Old Bridge, New Jersey that purchases and processes used cooking oil. Surveillance and a review of financial records indicate that Garden State Green Energy picks up a tanker truck of approximately 6,000 gallons of used cooking oil from the Warehouse #1 approximately three times a week.

13.     Florentino Valencia-Tepoz, Demetrio Valencia-Flores and others, maintained a warehouse at SUBJECT PREMISES B within the Middle District of North Carolina, from an unknown date in 2018 to the present. Florentino Valencia-Tepoz utilized SUBJECT PREMISES B to consolidate and store the stolen used cooking oil until it could be collected by Garden State Green Energy, a business located in Old Bridge, New Jersey that purchases and processes used cooking oil. Surveillance and a review of financial records indicate that Garden State Green Energy picks up a tanker truck of used cooking oil from SUBJECT PREMISES B approximately three times a week.

14.     Ruth Nava-Abarca, Florentino Valencia-Tepoz and Gregorio Vazquez-Castillo used proceeds from the SUBJECT OFFENSES to purchase and operate the La Maraka Night Club, or La Maraka Dance Club, located at 4528 N. Roxboro St, Durham, NC.

CLEAN RECOVERY, INC. and SIN SERVICES

In furtherance of the conspiracy, Florentino Valencia-Tepoz Ruth Nava-ABARCA and others known and unknown committed the following overt acts in the Middle District of North Carolina and elsewhere:

. 6

15.     On or about March 13, 2015, Ruth Nava-Abarca doing business as Sin Services, opened a Bank of America business fundamentals checking account #xxxx xxxx 1956 using 4162 US Highway 15S, #FF, Oxford, NC as a business address.

16.     On or about August 14, 2015, Florentino Valencia-Tepoz registered an Articles of Corporation with the North Carolina Secretary of State for the business Clean Recovery, Inc. Florentino Valencia-Tepoz listed the address of the incorporator as 311 S. LaSalle St., Apt. 46B, Durham, North Carolina.

17.     Over the course of April to December 2015, checks were issued under the Sin Services checking account on multiple occasions to drivers Hasan Ozvatan, Jaime Labra, Oscar Ugalde-Escalante, Salvador Ibarra, Joel Lopez Hernandez, Miquel Gutierrez IV, and Carlos Antonio Torres, in varying amounts for "contract cleaning kitchen." Five of the seven persons have been arrested on at least one occasion for stealing used cooking oil in North Carolina.

18.     On or about June 21, 2016, Clean Recovery's employees Samuel Cruz and Emilio Gomez-Gonzalez were arrested for the theft and attempted theft of used cooking oil from storage containers at Elizabeth's Pizza, Wendy's, and Pizza Hut, all located in Greensboro, North Carolina.

19.     Florentino Valencia-Tepoz texted employees from phone number (919) 282-4013 and directed the employees which restaurants to target.[3]

20.     One June 21, 2016, a Greensboro Police Department (GPD) Officer called Florentino Valencia-Tepoz at phone number (919) 282-4013. During the telephonic interview Florentino Valencia-Tepoz told the Officer that he had been the owner of Clean Recycling (sic) for approximately six months. Florentino Valencia-

---

[3] At the time of his June 16, 2016 arrest, Samuel Cruz advised officers that he picked up used oil from restaurants and then delivered it to Durham where his boss Florentino Valencia-Tepoz disposed of it. Cruz stated that Valencia-Tepoz texts him the restaurant addresses a day in advance.

Tepoz told the officer that he did not know that he needed an agreement with the restaurants to take the grease.

21.     On or about February 24, 2017, check #1217 was issued on the account of Sin Services[4] payable to Clean Recovery, Inc. for the amount of $4,250. The check note reads, "Contract cleaning kitchens, 1 week Durham Truck #2."[5]

22.     On or about February 24, 2017, check #1218 was issued on the account of Sin Services payable to Clean Recovery, Inc. for the amount of $4,500. The check note reads, "Contract cleaning kitchens, 1 week Tennesse (sic) Truck #1."

23.     On or about February 28, 2017, check #1219 was issued on the account of Sin Services payable to Clean Recovery, Inc. for the amount of $4,145. The check note reads, "Contract cleaning kitchens, 1 week Tennesse (sic) Truck #3."

24.     On or about March 2, 2017, Gregorio Vazquez-Castillo and Rene Espinoza were arrested for the theft of 2,200 pounds of used cooking oil from Wing Stop in Knoxville, Tennessee. The two men were caught in Box Truck # 9 that was also used in the 2016 Greensboro thefts.

25.     The chart below reflects financial activity of Sin Services, Clean Recovery, and Garden State Green Energy over the period of four days and shows that the conspirators acted in concert and continued to operate cells in Durham, NC and Knoxville, TN.

---

[4] The check was issued from Bank of America Account No. xxx1956, DBA Sin Services, Ruth Nava-Abarca, 4162 US Highway 15S, Oxford, NC 27565, (917) 324-9091.

[5] Your affiant interviewed a driver of the organization in August 2016. The driver stated that Ruth Nava takes care of paying the drivers and that the drivers are paid via paycheck under the guise of being issued by a fake cleaning service.

| Date | From | To | Amount | For |
|---|---|---|---|---|
| 4/2/17 | Sin Services | Cls Mangt | $1,150 | Payment April rent Tennessee |
| 4/3/17 | Garden State | Sin Services | $4,000 | Deposit |
| 4/5/17 | Sin Services | Regional Commerce Center | $292 | April rent Durham |
| 4/6/17 | Garden State | Sin Services | $4,000 | Deposit |
| 4/6/17 | Garden State | Sin Services | $1526.05 | Balance for 6195 gals at 77.33% oil, $-$1000/balance - 50000 24.5¢ |
| 4/6/17 | Sin Services | Clean Recovery | $3,250 | Contract cleaning kitchens truck #2 |

26. On May 31, 2017, Ruth Nava-Abarca made a $10,000 down payment to purchase the Night Club.

27. On or about July 24, 2017, Gregorio Vazquez-Castillo, a driver for Clean Recovery, registered Articles of Corporation with the North Carolina Secretary of State for the Night Club. Gregorio Vazquez-Castillo listed the mailing address as 4528 N. Roxboro St., Durham, North Carolina, within the Middle District of North Carolina.

28. Payments to buy the Night Club and property rent were paid through the Sin Services business account. Payments for the Night Club were conducted through Ruth Nava-Abarca's Sin Service business account, however management and operations of the Night Club was conducted by Florentino Valencia-Tepoz and

9

individuals also associated with the Clean Recovery business activities. The chart below summarizes the numerous payments related to the Night Club:

| Date | Check # | Payable to: | Amount | For: |
|------|---------|-------------|--------|------|
| 5/31/17 | 1255 | Ruth Nava | $2,800 | Payment for buy night Club Durham |
| 5/31/17 | 1256 | Darvin Flores | $10,000 | down payment for buy La Zona Vida Night Club Durham balance $12,000 |
| 06/06/17 | 1263 | Larry Sloan | $4,500 | rent |
| 06/06/17 | 1264 | Larry Sloan | $500 | Deposit |
| 08/04/17 | 1290 | Darvin Flores | $3,000 | First payment for bar in Durham balance $6,000 |
| 08/22/17 | 1295 | Larry Sloan | $3,000 | Payment for rent august la guarara dance club durham |
| 08/07/17 | 1299 | (blank) | $2,000 | Payment rent September 4528 N. Roxboro "la maraca dance club" |
| 09/13/17 | 1300 | Darvin Flores | $3,000 | Payment total balance for La Maraka Night Club |
| 09/16/17 | 1305 | Darvin Flores | $3,000 | Payment buy for La Maraka Night Club |
| 09/20/17 | 1301 | Darvin Flores | $3,000 | Last Payment buy for La Maraka Night Club |

29.    On August 1, 2017, agents conducted surveillance on Box Truck # 5. The box truck traveled from a known address in Oxford, North Carolina to Warehouse #1. After 20 minutes the box truck departed Warehouse #1 and traveled to the Night Club where Juan Maldonado-Hernandez and George Morales parked their respective registered vehicles at the Night Club. Juan Maldonado-Hernandez and George Morales departed the Night Club and traveled in Box Truck # 5 along I-85 throughout Mebane, North Carolina. Agents observed Juan Maldonado-Hernandez and George Morales steal approximately 1,487 pounds of used cooking oil from three different restaurants. The containers were clearly marked property of Valley Proteins and Green Light BioFuels. Agents terminated the surveillance because it appeared Maldonado-Hernandez was conducting counter-surveillance.

30.    On August 2, 2017, at approximately midnight, Gregorio Vazquez-Castillo and Samuel Cruz departed the then residence of Florentino Valencia-Tepoz and Gregorio Vazquez-Castillo located at 3015 N. Duke Street, Durham, NC, 27704 and traveled in Box Truck #1 along NC Highway 55 throughout Durham, Cary, and Apex. Agents observed Gregorio Vazquez-Castillo and Samuel Cruz steal 9,842 pounds [6] of used cooking oil from 13 different restaurants. The containers were clearly marked property of Dar-Pro Ingredients, Valley Proteins, Mahoney's, and Green Light BioFuels.

31.    Following the thefts, Gregorio Vazquez-Castillo and Samuel Cruz traveled to the Night Club where they parked Box Truck #1. Gregorio Vazquez-Castillo entered and remained inside the Night Club while Samuel CRUZ departed the area.

---

[6] Representatives from Dar-Pro Ingredients assisted your affiant in determining the amount of used cooking oil stolen by comparing the remaining visible oil lines in the tank and the size of the container.

32.     On August 2, 2017, approximately 60 minutes after Box Truck #1 returned, Box Truck #5 arrived at the Night Club. Juan Maldonado-Hernandez and George Morales left the box truck parked at the Night Club and departed the area.

33.     On August 2, 2017, a check was issued under the Sin Services checking account to Florentino Valencia-Tepoz for the amount of $4,240.00 for, "contract cleaning kitchens 1 week truck #3."[7]

34.     On August 3, 2017, in the morning hours, Salvador Ibarra-Escalante arrived at the Night Club and entered Box Truck #5. Salvador Ibarra-Escalante drove it to Warehouse #1 for a brief moment and then drove to the 3015 Duke Street, Durham, NC residence. After an unknown activity, Salvador Ibarra-Escalante drove back to Warehouse #1. Agents observed Salvador Ibarra-Escalante load hoses from the rear of the box truck into Warehouse #1 and begin pumping. Approximately one hour later, Salvador Ibarra-Escalante drove Box Truck #5 to the Night Club and swapped it out for the Box Truck #1. Salvador Ibarra-Escalante drove back to Warehouse #1 and repeated the process.

35.     On August 3, 2017, later in the same day, at approximately 7 p.m., agents observed a tractor-trailer registered to Garden State Green Energy arrive at Warehouse #1. Salvador Ibarra-Escalante and Ruth Nava-Abarca arrived at Warehouse #1 minutes later. Salvador Ibarra-Escalante unlocked Warehouse #1. Salvador Ibarra-Escalante and Ruth Nava-Abarca then dragged two hoses from inside Warehouse #1 and inserted them into the tanker trailer.

36.     Upon completion of pumping, agents followed the tractor trailer north on I-85 and observed the truck cross the state line into Virginia.

---

[7] The numbering system assigned by the conspirators does not necessarily correlate to the numbering of Box Trucks by your affiant.

37. On or about August 4, 2017, Gregorio Vazquez-Castillo, using the alias "Jaime Castillo" and "jc produccion", posted a video on the La Maraka Facebook social media page announcing the club's readiness to open. The video displayed the addition of large projection screens, scaffolding lighting, and night club speakers. Event flyers posted on the page list phone numbers (919) 793-1319 and (919) 282-4013 (Florentino Valencia and Gregorio Vazquez-Castillo) for contact and information.

38. On June 15, 2018, at 2:13 a.m., officers with the Burlington Police Department (BPD) in Burlington, NC conducted a traffic stop on Box Truck #1. The driver, George Luis Morales, Jr. and the passenger, Juan Carlos Hernandez Maldonado, occupied the truck. The subjects were in the public vehicular area near the back of the Bojangles alongside the grease container owned by Valley Protein when officers first observed them. The BPD officer released the subjects and referred the incident to the investigative division. A BPD detective called the subjects the next day and both subjects declined to be interviewed.

39. On or about July 1, 2018, Florentino Valencia-Tepoz and Gregorio Vazquez-Castillo moved from the Duke Street address. Your affiant also determined that the organization was no longer using Warehouse #1 at the Regional Commerce Center to consolidate and store the stolen used cooking oil.

40. On November 5, 2018, your affiant conducted queries of law enforcement databases and learned that Valencia-Tepoz showed a recent change of address associated to 215 William Penn Plaza, Durham, NC. A drive-by of the apartment complex resulted in locating a van being driven by Valencia-Tepoz parked in front of the 800 building. Your affiant spoke with a representative of the apartment complex and determined that Valencia-Tepoz lived at apartment number 822, SUBJECT PREMISES A.

41. On December 6, 2018, your affiant conducted surveillance at Valencia's residence and observed Florentino Valencia-Tepoz and Demetrio Valencia-Flores exit SUBJECT PREMISES A. The men then departed in a gray Honda Odyssey (NC LP#

13

CFL-5482) and a white Nissan Rogue (NY LP# HXK-8608) respectively and drove to the Night Club. Both subjects entered the business. Valencia-Tepoz departed the Night Club minutes later in the gray Honda Odyssey van and travelled to the Bank of America at 3807 N. Duke St., Durham, NC 27704. Valencia-Tepoz entered the bank and remained for approximately 5-10 minutes. Upon departing the Bank of America Valencia-Tepoz traveled a short distance to the Wells Fargo bank located at 3714 N. Duke St., Durham, NC 27704. Your affiant followed Valencia-Tepoz as he entered the bank. Your affiant observed Valencia-Tepoz conduct two or three cash deposits at the counter.

42. On January 14, 2019, your affiant reviewed Wells Fargo Bank of America banking statements for Florentino Valencia-Tepoz and Clean Recovery. The statements showed that in December 2018, Valencia-Tepoz's mailing address changed to SUBJECT PREMISES A.

43. On or January 19, 2019, your affiant reviewed Bank of America banking statements for Florentino Valencia-Tepoz and Clean Recovery. The statements showed that in August 2018, Valencia-Tepoz's mailing address changed to SUBJECT PREMISES A.

44. A review of the records provided by Wells Fargo Bank revealed that Valencia-Tepoz began writing monthly checks from the Clean Recovery account (xxx19602) to SUBJECT PREMISES B on or about November 11, 2018.

45. On March 25, 2019, your affiant observed box truck #10[8] on Roxboro Street in Durham, NC. Your affiant followed the truck to SUBJECT PREMISES A and observed Valencia-Tepoz exit the truck and walk up to the second-floor.

---

[8] Box Truck #10 is registered to Clean Recovery at 215 William Penn Plaza, Durham, NC (the apartment complex address, i.e., SUBJECT PREMISES A, without the associated apartment number.)

14

46.     On April 29, 2019, your affiant conducted surveillance at SUBJECT PREMISES A and observed Valencia-Tepoz exit the apartment. Valencia-Tepoz departed in box truck #10.

47.     On April 29, 2019, your affiant continued surveillance in Durham and traveled to SUBJECT PREMISES B. Your affiant observed a Garden State Green Energy blue tractor with a tanker trailer backed in behind the fence. Your affiant observed an unknown Hispanic male wearing a safety vest and Valencia-Tepoz using hoses to pump into the tanker. One of the hoses was being handled from the rear of a white box truck by the unknown Hispanic male. Your affiant observed an Intermediate Bulk Container (IBC) tote and a Honda pump in the rear of the box truck.

48.     On May 7, 2019, your affiant conducted an open source internet search and found an advertisement for the rental of the La Maraka Event Center (same address as the Night Club) posted on the Facebook social media account of Demetrio Valencia. The phone numbers provided to book the event center return to (919) 407-3202 (Nails by Kelsy),[9] (919) 793-1319 (Gregorio Vazquez-Castillo), and (347) 388-5032 (Demetrio Valencia-Flores) respectively.

49.     On May 9, 2019, your affiant started surveillance at 11:30 p.m. at SUBJECT PREMISES B and followed Box Truck #11[10] to Kernersville, NC. One of the occupants of the box truck originally arrived at SUBJECT PREMISES B in the black Acura TL registered to Gregorio Vazquez-Castillo. Your affiant followed Box Truck #11 and observed the occupants steal or attempt to steal used cooking oil from

---

[9] Nails By Kelsy is a nail salon in Durham, NC run by Kelsy Munguia, the wife of Florentino Valencia-Tepoz. Munguia resides at SUBJECT PREMISES A.

[10] Box Truck #11 is registered to Clean Recovery at 215 William Penn Plaza, Durham, NC (the apartment complex address i.e., SUBJECT PREMISES A, without the associated apartment number.)

15

behind eight (8) businesses. The containers were clearly marked property of Dar-Pro Ingredients, Valley Proteins, Blue Ridge Biofuels, and/or Biodiesel Four.

50. On May 10, 2019, your affiant conducted surveillance at SUBJECT PREMISES B and observed Valencia-Tepoz and Valencia-Flores uploading used cooking oil from the warehouse to a Garden State Green Energy tanker truck. HSI agents conducted surveillance of the tanker truck and observed it cross the Virginia state line and depart North Carolina.

51. On May 13, 2019, your affiant observed a Garden State Green Energy tanker trailer depart SUBJECT PREMISES B. Your affiant then observed Valencia-Tepoz and Valencia-Flores drive Box Truck #1 and Box Truck #11 respectively to a local gas station. After fueling the trucks and the pumps in the rear of the trucks, Valencia-Tepoz departed and traveled to SUBJECT PREMISES A and parked Box Truck #11.

## EVIDENCE LIKELY TO BE FOUND AT SUBJECT PREMISES A AND B

52. Based on my involvement in this investigation and based on my training and experience, I know that businesses keep and retain records in the normal course of business, that these records are frequently used in employment, financial, tax, and/or legal matters, and that these records are typically maintained at their principal place of business or home offices. These records often include, but are not limited to, personnel records that include applications, resumes, payroll records, DHS Form I-9s, performance appraisals, assignment histories, residential information, tax information, immigration information, many other types of information that specifically relate to the hiring, employing, and firing of personnel, invoices, federal and state tax records, financial records including accounts receivable and accounts payable records, client records, contracts, and other records.

53. Based on my involvement in this investigation and based on my training and experience, I know that individuals who commit crimes and operate illegitimate

businesses often maintain records of their transactions and dealings, just as legitimate businesses routinely do. During and even after the commission of their illegal acts, these individuals and businesses often maintain documentary and electronic records over long periods of time, even years, to memorialize their past activities. These records are routinely maintained in paper and/or electronic format.

## CONCLUSION

54.     Based on the above information, your affiant believes there is probable cause to believe that Salvador Ibarra-Escalante, Ruth Nava-Abarca, and Florentino Valencia-Tepoz knowingly and intentionally committed the SUBJECT OFFENSES, and that their illegal business activities are still ongoing.

55.     Based on the above information, there is probable cause to believe that the SUBJECT OFFENSES have been violated, and that the property and items listed in Attachment C and Attachment D, are to be located at SUBJECT PREMISES A and SUBJECT PREMISES B.

56.     Based upon the foregoing, I respectfully request that this Court issue a warrant to search SUBJECT PREMISES A and SUBJECT PREMISES B, more particularly described in Attachment A and Attachment B, and to authorize the seizure of the items described in Attachment C and Attachment D.

_____
Special Agent William McLane
Homeland Security Investigations


Sworn to and subscribed by me
this _24_ day of _May_____, 2019

_____
Honorable Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina

17

## Attachment A

The residence is located at 215 William Penn Plaza, Apartment 822, in Independence Park Apartment Homes, in Durham, County of Durham, North Carolina 27704, within the Middle District of North Carolina, and is further described as a multilevel building with tan siding and brick exterior and white trim. The apartment unit is located on the second floor of a building marked with "800." The apartment is at the top of the stairs and on the southwest corner. There is a Christmas wreath[1] on the front door and to the left of the door is a black placard with the numbers "822" in white.



---

[1] Verified visually within one week of May 24, 2019.

## Attachment B

The business is located at 116 N. Hoover Road, Durham, County of Durham, North Carolina 27703, within the Middle District of North Carolina, and is further described as a compound of single-story storage units behind a locked fence and gate. Storage Unit 101 is in the building located in the southeast corner of the fenced in business compound. Storage Unit 101 faces west and is further marked below with an X.



## Attachment C

This warrant authorizes (i) the search of SUBJECT PREMISES A as described in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

A. evidence of violations of Title 18 U.S.C. Section 2314 (Interstate Transportation of Stolen Property) and Section 371 (Conspiracy), hereinafter referred to as the "SUBJECT OFFENSES;" or

B. any item constituting contraband due to the SUBJECT OFFENSES, fruits of the SUBJECT OFFENSES, or other items possessed whose possession is illegal due to the SUBJECT OFFENSES; or

C. any property designed for use, intended for use, or used in committing any SUBJECT OFFENSES,

in the form of:

1. Notes, documents, business records, payment records, or correspondence, including originals or copies, relating to the apparent business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz, involving the purchase, sale, or transportation of cooking oil; and

2. Diaries, contacts and address books, and other documents containing the names and addresses of individuals who may have been contacted by CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz for the purpose of purchasing, selling, or transporting cooking oil; and

3. Records evidencing occupancy or ownership of the SUBJECT PREMISES A described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

4. Immigration forms or applications, Internal Revenue Service forms or documents, business forms or documents, state or country driver licenses or identification documents or copies of such documents, and other documents relating to statutes or regulations which govern a person's entry into, stay, or employment in the United States (U.S.), if such documents appear related to the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving purchase, sale, or transportation of cooking oil; and

5.	Foreign passports, U.S. or foreign birth certificates or copies of such documents, and U.S. or foreign visa or entry permits or copies of such documents, if such documents appear related to the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving purchase, sale, or transportation of cooking oil; and

6.	Business documents, government forms and applications, correspondence, and photographs which identify any potentially unidentified co-conspirators involved in the interstate transportation of stolen property or the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving purchase, sale, or transportation of cooking oil; and

7.	Documents relating to the leasing or purchase of real property, personal property, or vehicles, including lease agreements, lease payments, real or personal property purchase agreements, if such documents relate to business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving purchase, sale, or transportation of cooking oil; and

8.	Documents identifying any potential subsidiary businesses owned or operated by any identified operator or employee of CLEAN RECOVERY and SIN SERVICES, including but not limited to Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz; and

9.	Forms, job applications, notebooks, photographs, payrolls records, or other documents which identify the employers, operators, supervisors, employees, and contractors of CLEAN RECOVERY and SIN SERVICES; and

10.	United States currency and other financial instruments related to the purchase, sale, or transportation of cooking oil, including financial proceeds from the operation of CLEAN RECOVERY and SIN SERVICES; and

11.	Financial records and data showing business and personal assets and cash flow, including, but not limited to: income statements, cash receipt journals, bank statements, deposit slips, canceled and un-canceled checks, check stubs, check registers, tax returns, general journals, and correspondence about financial matters, related to the purchase, sale, or transportation of cooking oil and business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving purchase, sale, or transportation of cooking oil; and

12.	Documents, personal effects, or physical evidence at the location of the search tending to show dominion and control over SUBJECT PREMISES A, including

2

keys, fingerprints, clothing, handwriting exemplars, lease agreements, utility records, mail, items containing forms of identification such as a person's name, photograph, Social Security number or driver's license number, and, information which can be obtained by answering and listening to incoming phone calls during execution of the search and seizure warrant; and

13. The devices and the electronically stored contents of any computer, cell phone, or other electronic data processing and storage device capable of electronically storing, processing, generating, recording, or maintaining the kinds of documents, forms, records, business records, and correspondence identified in Items 1 through 9 and Items 11 through 12 above (as well as electronic forms of correspondence, such as e-mails);

    a. The computers, cell phones, and other electronic data processing and storage devices referenced in Item 13 above shall including but not be limited to following kinds of devices: cell phones, desktop computers, laptop computers, handheld computers, central processing units, computer towers, servers, hard drives, external and portable hard drives, USB flash drives, telephones, answering machines, fax machines, computer modems, pagers, and other telecommunications devices, CD-Rs, CD-RWs, DVDs, floppy disk drives and diskettes, tape drives and tapes, zip drives, SD cards, optical storage devices, dongles, encryption keys, personal data assistants, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, digital communication devices such as modems, routers, associated telephone sets, speed dialers, and other controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals and input devices, such as joysticks, computer mice, scanners, and digital writing pads;

    b. Items also authorized to be seized include system documentation, operating logs and documentation, software manuals, computer passwords, hot keys, data security devices and software, connecting switches, connecting cables, wires, and power supplies, and interface devices for each of the devices identified in Item 13 above;

    c. Items also authorized to be seized include software, stored on any type of medium such as hard disks, floppy disks, CD-Rs, CD-RWs, DVDs, cassette tapes, or other permanent or transient storage medium which is designed for or necessary for the use of the devices identified in Item 13 above;

    d. While the seizure of the electronically stored contents of all devices identified in Item 13 above is authorized by this search and seizure

warrant, a search of those contents is not authorized by this search and seizure warrant and a future search warrant would have to be issued for the search of the contents of any device, with the following exception:

i.  In order to ensure that the electronically stored contents and data contained on the devices identified in Item 13 are not altered or destroyed by their removal from SUBJECT PREMISES A, law enforcement agents and officers involved in the search of SUBJECT PREMISES A under the authority of this search and seizure warrant shall be authorized to make forensic copies of the electronically stored contents using digital extraction devices and software, or through other forensically sound means, in order to protect and preserve the contents, but not to search the contents, except that such individuals may view limited device data to the extent necessary to perform the digital extraction and make a forensic copy;

ii. In order to make such forensic copies of electronically stored contents referenced immediately above, law enforcement agents and officers involved in the search of SUBJECT PREMISES A shall be authorized to employ other officers, civilian employees of any law enforcement organization, or outside experts to forensically access, copy, and preserve data, but not to search the contents.

4

## Attachment D

This warrant authorizes (i) the search of SUBJECT PREMISES B as described in Attachment B for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

A. evidence of violations of Title 18 U.S.C. Section 2314 (Interstate Transportation of Stolen Property) and Section 371 (Conspiracy), hereinafter referred to as the "SUBJECT OFFENSES;" or

B. any item constituting contraband due to the SUBJECT OFFENSES, fruits of the SUBJECT OFFENSES, or other items possessed whose possession is illegal due to the SUBJECT OFFENSES; or

C. any property designed for use, intended for use, or used in committing any SUBJECT OFFENSES.

in the form of:

1. Notes, documents, business records, payment records, or correspondence, including originals or copies, relating to the apparent business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz, involving the purchase, sale, or transportation of cooking oil; and

2. Diaries, contacts and address books, and other documents containing the names and addresses of individuals who may have been contacted by CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

3. Records evidencing occupancy or ownership of the SUBJECT PREMISES B described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

4. Immigration forms or applications, Internal Revenue Service forms or documents, business forms or documents, state or country driver licenses or identification documents or copies of such documents, and other documents relating to statutes or regulations which govern a person's entry into, stay, or employment in the United States (U.S.), if such documents appear related to the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

5.    Foreign passports, U.S. or foreign birth certificates or copies of such documents, and U.S. or foreign visa or entry permits or copies of such documents, if such documents appear related to the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

6.    Business documents, government forms and applications, correspondence, and photographs which identify any potentially unidentified co-conspirators involved in the interstate transportation of stolen property or the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

7.    Documents relating to the leasing or purchase of real property, personal property, or vehicles, including lease agreements, lease payments, real or personal property purchase agreements, if such documents relate to the business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

8.    Documents identifying any potential subsidiary businesses owned or operated by any identified operator or employee of CLEAN RECOVERY and SIN SERVICES, including but not limited to Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz; and

9.    Forms, job applications, notebooks, photographs, payrolls records, or other documents which identify the employers, operators, supervisors, employees, and contractors of CLEAN RECOVERY and SIN SERVICES; and

10.    United States currency and other financial instruments related to the purchase, sale, or transportation of cooking oil, including financial proceeds from the operation of CLEAN RECOVERY and SIN SERVICES; and

11.    Financial records and data showing business and personal assets and cash flow, including, but not limited to: income statements, cash receipt journals, bank statements, deposit slips, canceled and un-canceled checks, check stubs, check registers, tax returns, general journals, and correspondence about financial matters, related to the purchase, sale, or transportation of cooking oil and business activities of CLEAN RECOVERY, SIN SERVICES, Salvador Ibarra-Escalante, Ruth Nava-Abarca, or Florentino Valencia-Tepoz involving the purchase, sale, or transportation of cooking oil; and

12.    Documents, personal effects, or physical evidence at the location of the search tending to show dominion and control over SUBJECT PREMISES B, including

2

keys, fingerprints, clothing, handwriting exemplars, lease agreements, utility records, mail, items containing forms of identification such as a person's name, photograph, Social Security number or driver's license number, and, information which can be obtained by answering and listening to incoming phone calls during execution of the search and seizure warrant; and

13.     The devices and the electronically stored contents of any computer, cell phone, or other electronic data processing and storage device capable of electronically storing, processing, generating, recording, or maintaining the kinds of documents, forms, records, business records, and correspondence identified in Items 1 through 9 and Items 11 through 12 above (as well as electronic forms of correspondence, such as e-mails);

a.  The computers, cell phones, and other electronic data processing and storage devices referenced in Item 13 above shall including but not be limited to following kinds of devices: cell phones, desktop computers, laptop computers, handheld computers, central processing units, computer towers, servers, hard drives, external and portable hard drives, USB flash drives, telephones, answering machines, fax machines, computer modems, pagers, and other telecommunications devices, CD-Rs, CD-RWs, DVDs, floppy disk drives and diskettes, tape drives and tapes, zip drives, SD cards, optical storage devices, dongles, encryption keys, personal data assistants, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, digital communication devices such as modems, routers, associated telephone sets, speed dialers, and other controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals and input devices, such as joysticks, computer mice, scanners, and digital writing pads;

b.  Items also authorized to be seized include system documentation, operating logs and documentation, software manuals, computer passwords, hot keys, data security devices and software, connecting switches, connecting cables, wires, and power supplies, and interface devices for each of the devices identified in Item 14 above;

c.  Items also authorized to be seized include software, stored on any type of medium such as hard disks, floppy disks, CD-Rs, CD-RWs, DVDs, cassette tapes, or other permanent or transient storage medium which is designed for or necessary for the use of the devices identified in Item 13 above;

d.  While the seizure of the electronically stored contents of all devices identified in Item 13 above is authorized by this search and seizure

3

warrant, a search of those contents is not authorized by this search and seizure warrant and a future search warrant would have to be issued for the search of the contents of any device, with the following exception:

    i. In order to ensure that the electronically stored contents and data contained on the devices identified in Item 13 are not altered or destroyed by their removal from SUBJECT PREMISES B, law enforcement agents and officers involved in the search of SUBJECT PREMISES B under the authority of this search and seizure warrant shall be authorized to make forensic copies of the electronically stored contents using digital extraction devices and software, or through other forensically sound means, in order to protect and preserve the contents, but not to search the contents, except that such individuals may view limited device data to the extent necessary to perform the digital extraction and make a forensic copy;

    ii. In order to make such forensic copies of electronically stored contents referenced immediately above, law enforcement agents and officers involved in the search of SUBJECT PREMISES B shall be authorized to employ other officers, civilian employees of any law enforcement organization, or outside experts to forensically access, copy, and preserve data, but not to search the contents.

4